Dennis Ballinger, Appellant versus Jesse Duggar. We have Mark Morthland for the Appellant and for the Appellee, Eddie Carpenter. Good morning. Please proceed. May it please the Court, Mr. Carpenter. I'm Mark Morthland on behalf of Dennis Ballinger. I think I know what I'm talking about today. I'm just not sure I know how to make it too exciting. We're here on a cellular phone tower or cable phone tower. My client, Mr. Ballinger, purchased the taxes which were assessed on that particular tower at the annual sale of lands and lots held in Morgan County, Illinois. At the time, the certificate of purchase said that he was acquiring, if I remember correctly, an improvement on leased land. After acquiring the certificate and looking at the property record card, the property record card also said improvements on leased land, but it also identified, I believe, the Jesse Duggar estate as the owner of that real estate. Mr. Ballinger petitions for a tax fee, includes on that petition the certificate which he was issued to the cable phone tower and also the certificate, or the PIN number, I'm sorry, the PIN number for the real estate on which the cable phone tower rests. The Duggar Trust files a motion to dismiss, the court grants the motion to dismiss, and further assesses attorney's fees. And as a result, we appeal. In addition, the trial court, we went forward on our application for order to the Rankin County Clerk to issue tax fees, and the trial court denied that application. I think as a result of that, we have a final and appealable order, and that's why we're here. The question is, what is that power? What are we going to call that? Is that real estate? Is that personal property? Well, we know that if it's personal property, that we can't tax it. The 1970 Constitution, as well as the Freeze Act, prohibits assessors and treasurers throughout the counties from assessing taxes on personal property. Was it a tax on the leasehold? Well, no, because we know that only in very, very limited situations may an assessor, treasurer, or a county, for that matter, tax a leasehold. One of the limitations, or one of the exceptions, I should say, to that rule is if you have the underlying land is tax-exempt, and there is a lease to another entity, then that leasehold may be taxed. But that doesn't apply in our situation. So we've got to figure out what that power is. The Duggar Trust suggests that that power is a fixture, that it is permanently affixed to the real estate. Well, and also the judge, in part of his findings, quoted it and it's cited at page 10 of the brief. First, it is a well-known fact, as acknowledged by the trial court in its comments at the time of hearing, that counties frequently tax improvements on land separate from the land itself. To a certain extent, and that's page 10 of the Jesse Duggar Trust brief, to a certain extent that is true. If you have a piece of bare real estate, unimproved, there is a tax which is assessed. If you put a building on there, under the same PIN number, that tax is going to go up because you have just improved or enhanced the value of that ground. If you put a garage on that, that tax is going to go up because you have just improved or enhanced the value. But it still remains under the same property identification number. There is not a separate number affixed for the garage, a separate number affixed for the barn, and a separate number affixed for the house. It's one PIN number. And all of those structures are... But I thought in this case we're dealing with multiple PIN numbers, aren't we? One of them is 016, the other is 010? That's correct, because I believe that the treasurer and the assessor of Morgan County erroneously taxed that tower. One, if it's personal property, clearly erroneous. The treasurer was incorrect in affixing the number. But I'm arguing that if this court finds that it is a fixture, that still the treasurer is incorrect. Because you don't affix a separate PIN number for it. It should have fallen under the 010 PIN number, and that tax should have been increased because it was an improvement upon that ground. Just like the house on that ground. Does it make any difference, or should it make any difference in this case, that your client is an experienced tax sale buyer, and should understand these nuances better? And even if there's a mistake, assuming there is one, that this is something that might trick someone like me, who would be doing it for the first time, but shouldn't cause him any confusion? Well, I understand the court's question, and I understand that the trust has outlined the experience that Mr. Ballinger has had in the appellate court, and he is a tax purchaser. The problem we're confronted with, Judge, is that this is going on throughout the state. They are, these treasurers are... I'm not sure, what is this that is going on? They're taxing cell towers throughout the state. They're affixing a separate PIN number for these cell towers. I tell you, it's not bad that they tax them. It's bad, from your perspective, for keeping track of things, that they give them a separate PIN number? I don't think, well, I'll be honest, it's my position that they shouldn't be taxing his personal property, period. But if this court, and I've got another case pending in the third district appellate court, involving a cellular tower, almost identical situation, if this court finds that it's a fixture, the treasurer should not be affixing or assigning a separate PIN number for fixtures. As an example... So if they don't tax them, and they don't give them a PIN number, there aren't any delinquent taxes? Correct. Which means that your client can't purchase them, can't get a tax deed, right? To a cellular phone tower. So are you representing your client, or are you representing people who have cellular phone towers? I'm representing my client. Why, and what is it, if you were to prevail, would happen in this case? Forget about what will happen in other counties. I think there are three options. One, you affirm, which obviously is not too appealing to my client. Second, you prevail. If I prevail, then this court finds that the treasurer of Morgan County may not assess a tax to, in this case, a cable phone tower, because this cable phone tower is personal property, not subject to taxation in Illinois. And then what happens? Then the case is reversed and remanded with directions for the court to enter a sale in... directing the trial court to enter a sale in error. And then what occurs? Then we don't have treasurer's cellular... No, no, no. What happens with your client? And this tower, and this tax deed, and... Well, my client recovers his money that he has expended, and the treasurer of Morgan County no longer taxes cable towers and cell towers within his county. And your client walks away. Or the alternative. The alternative would be that it is a fixture, but that the treasurer should not assign a separate PIN number to fixtures located on real estate. My client gets the real estate and walks away. Your client gets however many acres, plus the house on it, plus the cell tower lease, all for... That's a third option. All for... well, is that one very likely? No. No. No. So what's most likely is effectively a refund, if I understand that correctly, of what your client has paid out, and he walks away. And we have an appellate court opinion that says that treasurers throughout the state can't tax towers because of personal property. Why does your client care about that? Because it's incorrect that they're doing it. Yeah, but what's his interest? Other than as a citizen who wants to see the law properly applied. That's... well, he's also a tax purchaser in the state of Illinois, and he thinks it's incorrect that treasurers are taxing these items of personal property. But if he's a tax purchaser and he prevails on this idea, then there will never be the opportunity for him to get that unlikely thing that I talked about, i.e. a real windfall, to get the property and the tower and the house, all because of a tax deed. I mean, it almost seems counterintuitive that he wants us to find that this error by the treasurer and the folks in Morgan County ought to just sort of wipe this out, he gets a refund, walks away. Well, I can stand here and tell you, Judge, that we want the real estate, but that's not reality, I don't think. And I'm sure that my colleague will argue that a fairness issue, that his client paid the taxes on 010, didn't pay the taxes on 016, because there was an assessment. Well, the assessing was Alliance Communication Company. And the earlier agreement was that if there's any increase in taxes, they're the ones that are supposed to pay it. Well, that's under the lease agreement. Right. Correct, that is correct. But if you study that paragraph, which is paragraph 6 of the lease agreement in the Common Law Record, page 27, whoever drafted that envisioned an increase in taxes on that PIN number, on the real estate PIN number. And so they covered their bases by saying, unless he's going to pay it. They didn't anticipate treasurer or the county affixing or assigning a separate PIN number. Now, I can argue that the Duggar Trust did not make a complete redemption, because they still were the owner of that property. And I think it mentions in that lease they're the owner of that property. It mentions on the property record card they're an owner of that property. So they were responsible for paying whatever tax was assessed on that property, but instead they did not. So that was only a partial redemption or partial payment on the taxes. Secondly, I can throw out at this court the fact that the procedure adopted by them in filing a motion to dismiss was incorrect. What should have been done under the statute is a redemption under protest. They could have redeemed it under protest. Then they could have gone to court at a later date and litigated this particular issue of whether or not you can tax a cellular tower and on and on. But instead they chose a route that is not really recognized under the revenue code. This issue of a fixture, I know that there's the Boylan v. Beeler case out of this court that dealt with the intention test and the three-prong test. And if you look carefully at that three-prong test, especially the second prong and the third prong of that test, this cellular phone tower is not a fixture. It's a piece of personal property. I paraphrase when I say paragraph number two, I'm sorry, the second prong of that Beeler intention test is that the annexed object is consistent with what the makeup of the property is. What about the argument that Mr. Carpenter makes in his brief about the definition of real property and the reference in the tax code, the land itself with all things contained therein and all building structures and improvements and other permanent fixtures thereon? Is this tower a permanent fixed fixture or structured improvement? That's a decision that you have to make. As this court well knows, the issue of permanent fixtures is a highly litigated issue. Is this tower a permanent fixture? And if it is, it's not entitled to be taxed separately. As an example, and there's a case, St. Louis v. Rockwell Graphic Systems, that court uses an analogy and it says, you go out and you buy a furnace at Sears. You've just bought yourself a piece of personal property. You go home and you install that. That furnace loses its individual identity. It's no longer a piece of personal property. It's a permanent fixture in that home or in that business. At that point in time, if it has enhanced the value of that business or that home, then the county officials are entitled to go in and increase the tax. They don't assign a separate pin number for that furnace and say, well, that's a fixture. We're going to tax that separate from the real estate and the building and the garage and everything else. I guess the same thing would be true if someone had a house and a big lot and built a garage on it. You've enhanced the value of that. The county is entitled to go out. The county shouldn't give it a separate pin number. Counties don't give it a separate pin number. If you look at property record cards, it says ground, I can't remember it exactly, house, garage, barn. Each one of those are assessed under that one pin number. In this case, the treasurer saw fit to put two pin numbers. And, you know, I'm speculating. Why do they do that? Why have they done that throughout the state? I understand this court's not concerned about the other cases, but, you know, treasurers are attempting to generate more revenue for the counties. How does it generate more revenue, and why wouldn't the owner be the one to object if that is the case? The owner is the voter within that county. You raise his taxes, he or she's not going to be very happy. You've got a cellular phone company or a cable phone company who, under this hypothetical, doesn't have any voters within your county. Well, let's tax them. So there's this political motivation for separate parcels? Separate parcel numbers, yeah. Separate parcel numbers. I hope you don't take that as a jaded view. No, I... My view, and I'm sad to say that many years in the judiciary have made me inherently skeptical. I want to know where the tower people are, because it seems to me that they're the ones who are being unfairly treated from your perspective. And instead, I've got this person, and I don't mean you, I mean your client, who profits from the very activity that he engaged in, and yet this victory for him doesn't result in a profit. It may do a greater good for clarity under Illinois law, but it's as if he's a stalking horse for somebody else. It's my opinion that tax purchasers throughout the state of Illinois are absolutely necessary. I think we have to concede that. They go in and purchase taxes and provide money for the various counties. They are rewarded for their efforts by receiving redemptions, which include penalties. Right. If there is no redemption, then redemption period expires, they acquire an order directing issuance of tax deed, and they get the real estate. Well, then they are really rewarded. I mean, there's an extra reward. In a lot of cases they are, in other cases not necessarily. Well, they hope to be or they wouldn't want that. But they have a marketable asset at that point in time. Right. In this case, as in several others, what do they have? Cellular phone tower with no ingress or egress, no easements. Well, if I own the cellular phone tower, I think there's somebody who would be interested in it, but it's not my property, I'd go out and cut the wires. Yeah. Now we have someone who's going to be real interested. Am I trespassing when I go cut the wires? No, you didn't give me the ground, you gave me the cell tower. I thought the whole parcel was not just the tower, but some of the area around the tower. What's happening here? Oh, I'm sorry. The Hancock County case I'm involved in, it's on appeal again at the 3rd District. The judge specifically entered an order saying, you get the cell tower, nothing underneath. My argument was judge. So I've got an order here, I'm going to go to the county clerk and I'm going to say, county clerk, please sign this bill of sale. Because you don't transfer cell towers by deed, you transfer them by bill of sale. So I need you to enter an order directing the county clerk to sign a bill of sale. Well, why can't you transfer it by deed, claiming it's real property? Let the phone company come in and argue. If this court finds that it is in fact a fixture, then I guess my argument is... Well, why do you need us? Why don't you ask the head of Knox County? I will. Hopefully down in the 5th District. What are they doing with windmills? That I don't think there has been any litigation with regard to taxation. But we can anticipate that. We've got a whole lot of windmills in our house. There's no case law in Illinois dealing with towers. It's a relatively, you know, 1979, the new Constitution in the 70s saying by 79, no tax on personal property. Prior to 79, I don't think we had any cell towers in Illinois. I've tried not to think about the windmill towers. But I have read that revenue to the counties is supposed to be one of the selling points. I mean, of course, I've read that in newspapers. So I don't know if that's... I've only seen them driving by. I don't... Let me ask this, Mr. Morthen. This is a strange sort of case. This is an argument, for lack of a better way to put it, that we haven't seen much of. Certainly I haven't. But I'm trying to figure out, nonetheless, this doesn't appear to be all that strange and unusual, given lots of stuff we hear. From whence comes this determination by the judge that this is a 137 case? What's that all about? Well, that kind of threw me for a loop also. I'm gathering that the judge concluded that it was... There was no basis in law or fact for my client to file a petition which included the certificate number for the ground and the certificate number for the cell tower. They're two different PIN numbers. So they were sold under two... I'm sorry. They were two different PIN numbers. And the PIN number assigned to the tower, the taxes were not paid. The PIN number for the real estate was paid by the government trust. So I think he was suggesting maybe that my client didn't have the authority to do that. I'm thinking just the reverse, that you don't tax the thing separately. Okay, thank you very much. Thank you, Mr. Morthen. Mr. Carpenter? Thank you, Your Honor. May it please the court. I'm interested to hear Mr. Morthen's statement that evidently what he is seeking here on behalf of his client is a refund of the taxes he paid on this tower. That's not anything that was ever brought up in the trial court. The only thing he requested in the trial court was a tax deed of my client's property, her home, her 4.5 acres. So I believe that what we really have here is Mr. Ballinger seeking to get back money that he invested in purchasing taxes on this tower and has brought my client, I think certainly an innocent party, into this litigation, into this appeal, into a situation she never should have been involved in. I think the courts, the justices, probably have had experience in the circuit court of being presented with petitions for tax deeds. I've seen it from the sidelines and usually the judge's eyes roll and they say, what do you got for me? And there usually is very little actual substance and argument and real consideration before the judges. And it is a labyrinthine provisions of the tax code that nobody wants to know anything about. Tax purchasers and their very few attorneys become well versed in that. But I think the general practice is for circuit courts to rely upon the petitioners to tell them the truth. And have you notified everybody you should? Yes, I have. Have you done what you should? Yes, I have. In this case, Mr. Ballinger betrayed his trust. Betrayed that trust. He put on his verified petition that he had bought the taxes on parcel 010. You'll even note in the record that that was written in by hand after the petition was typed up. I don't know if it was an afterthought. We have no evidence of why it came about that way. But he knowingly told the court under oath that he had bought the taxes on my client's parcel. I don't think he should be allowed to do that. It would be fine maybe today if he wasn't doing it in order to get my client's property, but just to get his money back. Mr. Ballinger, as we already noted, is a well-experienced tax purchaser. He knew what he was buying when he bought this piece of property. The evidence was there before him if he investigated ahead of time or even looked at the listing of the properties being sold at that sale. It said improvements on leased land. He was certainly under notice of what he was purchasing. And I think that particularly in tax deed situations, the courts have to rely upon their petitioners to do it right and tell them the truth. In a tax deed situation... What should have happened here? What should he have done, counsel? Pardon? What should the petitioner have said? The petitioner should have said nothing about parcel 010. He didn't buy the taxes on 010. That's my client's. He should have paid the taxes. And he should have proceeded on 016, which is what he bought at the tax sale. He certainly had the authority to do that. My client would have had no concern as to what he did with this communication tower after some type of deed or other relief was given to him, and that proceeded. But by adding 010, my client then is faced with the necessity of coming in and protecting her entire property. In these tax deed situations, it's different from most litigation. You don't have a summons, a sheriff delivering a summons here and saying you have to answer within 30 days. We have certified mail notice. We have maybe the sheriff delivering a take notice. But to get jurisdiction, certified mail. Had my client not been particularly alert, she would not now own her home. The court would have said, Mr. Ballinger, have you done everything you're supposed to? Yes, I have. He gets a tax deed to her house and 4.5 acres. She happened to be very alert. She looked at this notice, saw that her parcel number had been added to it. I think that's something most property owners would not do. Most property owners receiving that kind of notice would say, oh, this is about that tower. I paid my taxes and threw it in the trash. Who owns the tower? Who owns the tower? Alliance Communication is the name it was assessed to. That, quite frankly, is a part of the whole problem. I think they have gone broke. Somebody else maybe has taken on their assets. It's been difficult for us to find that out. We, in fact, it's not in the record, but we instituted a forcible entry action against them to try to get a roof and have the tower be removed. So your client did not have a lease with these people? Not with these people. With their predecessors, the lease carried over to these people. The predecessor of the owner of my client's parcel was the original. Was the 137 ruling by the trial court against Mr. Ballinger or against Mr. Northwood? Against Mr. Ballinger. Mr. Ballinger filed his petition pro se under oath. He signed a take notice that said he had bought the taxes on parcel 010. He signed an affidavit seeking the issuance of a tax deed under oath saying he had bought the taxes on 010. He hadn't done any of those things. Was there a hearing at which he was asked or someone explained the handwritten material on the certificate? No, there was no evidentiary hearing held as to how it came about, that 010. Well, wouldn't that make a difference? I mean, what if someone, the county clerk's office or recorder of deeds or whoever does it had written that out? I think it was incumbent upon Mr. Ballinger through his counsel to object to that if in fact that was the case. In other words, through our section 2619 motion, it came up to their attention that this had happened. Well, that may be in 2619, but when you want to impose sanctions, shouldn't questions of this kind be cleared up? You're inferring from the circumstances, if not accusing directly, that Mr. Ballinger is the guy who wrote on this stuff.  That he should have known better? But that's kind of different than actually if he had written himself. I think it was incumbent upon Mr. Ballinger, when it was called to his attention through the actions in the trial court, if he was going to divorce himself from that statement having been made to bring it to the court's attention at that time, he failed to do so. And throughout the appeal and throughout everything, he has certainly never indicated, when you write it on there, that it wasn't his request to obtain a tax deed on our property. In your motion for 137 sanctions, you made these allegations and asked the court to impose sanctions because of what had happened with the 010 being written on this certificate? Well, because not of it being written on, but simply specifically, but of 010 being, not specifically the fact that it was handwritten on, but that 010 was included in the petition, when Mr. Ballinger, under oath, said he bought the taxes on 010, and in fact hadn't done so. Repeated untruths told to the court, that had my client not been particularly alert, would have resulted in her losing her property. Do we need to even address or resolve this issue of what's real property? You talk about it in your brief. Does that matter? I think it does because Mr. Ballinger makes quite a point of the question of whether this tower is real estate or not. I think from the language of Section 1-130 of the tax code, this is the land itself defined as real estate, with all things contained therein, and also all buildings, structures, and improvements. Improvements is a pretty broad term. I think it's important that there was no evidence presented by Mr. Ballinger at the time of hearing as to the nature of this tower, the height of it, anything about how permanently it might be affixed to the real estate that would give him a basis for contending within those cases which indicate certain things that cannot be considered a part of the real estate. I guess, and I would also point out that in 1-130, it presents a sort of a dichotomy. It says that the land, real estate is the land itself, and all things contained therein, and also all buildings, structures, and improvements. As if it can be two separate things. I think an important aspect of this is that at no point has Mr. Ballinger been able to cite any provision in the tax code or court case that says that you cannot tax an improvement, a structure that's on real estate, separately from the underlying land. Well, what about the example I gave him? If you have a big lot and a house on it, and you build a garage unattached near the house, do you think it's appropriate for that to have a separate tax deed number? No, no tax number. And the reason for that is that that house or that barn or whatever it is is owned by the same person as owns the underlying land. That's the distinction here. The cell tower is not owned by Mrs. Duggar. It's owned by someone else, and it can then be its own separate real estate parcel being an improvement or being an instruction. So if I give an easement to someone to put up a tower, now what? I'm sorry. If I give an easement to someone to put up a tower, that's going to be a separate tax certificate? It certainly can be if it's a permanent structure or improvement on the land. The lease, of course, in this case, indicated that the lessee had the right to lease. What if I build it and then lease it out? I'm still the owner. In that case, I would say there's probably just one tax parcel if the structure and the underlying land are owned by the same person. I think that's the real distinction, is we've got real estate here owned by two separate parties, and therefore it is appropriate to have two separate tax bills. Mr. Ballinger in his briefing and Mr. Morthland's remarks today have attempted to make reference to the tower as being personal property. I think that really flies in the face of the provisions of the tax code. As I indicated earlier, there's no evidence really for the court to look at in the record that would justify overturning the decision of the Morgan County Treasurer or Assessor, whoever does this, to consider this as real estate improvement on leased land. That being the case, I don't think it's appropriate to refer to this as personal property. I think the underlying decision was made by the Morgan County authorities that this would be real estate as defined in Section 1-130. There's been no evidence presented here that... Well, if it were personal property, there would be no real property tax certificate anyway, I guess. Right. There wouldn't be a tax number issued or a tax bill assessed to it. All of the information before Mr. Ballinger, when he decided to purchase this property, indicated that it was improvements on leased land. Mr. Ballinger knew what he was doing. He'd been doing this for over 20 years. Does he do this with cell towers all over the place? Evidently. At least here and in whatever county that was, the other litigation, Hancock County. I think the real answer to Mr. Ballinger's problem is quit buying the taxes on these things if you don't like the result. Don't drag my client into this, requiring thousands of dollars of defense of property that she had already paid the taxes on. If the real issue here is the propriety of the Morgan County authorities to issue separate tax bills on this tower and whatnot, if that's the real issue, then sue the county for a declaratory judgment. Do something, but don't bring innocent taxpayers in to have to defend their property when they've done everything that they should. Notwithstanding Mr. Morthland's claim that my client should have redeemed the taxes on the tower, I suppose she would have the authority to do that, but to try to paint her as being somehow improper in her failing to redeem the taxes on real estate that she didn't own, I think is a considerable stretch. As far as the sanctions... Did she not own it? I'm sorry. Did she not own the property? She owned the real estate, but not the tower. Right. So the argument Mr. Morthland was making is that Mrs. Duggar should have redeemed the taxes on the tower, the delinquent taxes on the tower. I apologize for my confusion. The tax deed did not describe the property on which the tower is located? No. The parcel 016 is all land in this area. The description of the tract that is parcel 016 said improvements on leased land. So the parcel 016 includes no underlying land. And had it done so, I suppose Mr. Morthland's request here would be to obtain a tax deed to that underlying land that was leased, but that's not what was being taxed and that's not what he bought the taxes on. As far as the sanctions provisions are concerned, Your Honors, I think the trial court made it abundantly clear what its reasons were for imposing the sanctions, which were requested in our 2619 motion, that there is no basis whatever in fact or law for dragging my client in to have to defend her property that she had paid the taxes on as a result of Mr. Ballinger having presented, quite frankly, a falsified petition, falsified take notice and falsified affidavit. I realize that the provisions of Section 137 are punitive in nature, they shouldn't be used loosely, but we have a situation here in which, as I indicated earlier, I think Mr. Ballinger has betrayed the trust of the court, that he in fact had not done what he under oath said he had done, which was to buy the taxes on my client's property, and because of that he should be sanctioned for having done so. I think that provision must be invoked in this situation to prevent persons in Mr. Ballinger's situation from falsifying their pleadings and then seeking title to property they have no right to receive, never paid the taxes, and take it away from a decent tax-paying citizen such as my own client. I assume from your response earlier that you don't know  That I have no idea. But I think it's important that sanctions be upheld in order to act as a deterrent for his doing so again, as well as deterrent to others that might be in the same situation. We have asked in our brief also that the court remand this matter to the trial court to make the determination of additional fees that Ms. Duggar has unfortunately had to incur in defending this appeal. Any further questions? No. Thank you, Mr. Perkins. Mr. Northland, rebuttal. Thank you. I'll try to be very brief. Three points. First, the Boyle and Beeler case and the three-part intention test that I suggested to you, prong two and prong three were very important. In that particular case, if I remember correctly, it involved two grain dryers that were affixed to a concrete slab. It was a farming operation. They were grain dryers consistent with the farming process. So prong two of the three prong tests satisfied, prong one of the three prong tests satisfied. This court found that they were personal property, not subject to taxation. Take an example. The description of the grain dryers is portable. They're called portable grain dryers. That's where farmers buy them, and they can be moved. And they are bolted to concrete slabs, cell towers, cable towers, movable just like grain dryers. Machinery. Mr. Northland, have you done any research in other jurisdictions? I have not. It seems to me that with the proliferation of windmills, do you know whether the practices with windmills, do the people who are installing them buy the property? You know, I do not know. In fact, I hadn't thought about the windmill until this court mentioned it. I apologize. No, now I have something to think about on my way back to Decatur. We've had several cases where the land was purchased by the company. And that's not this case. In this case, Mrs. Duggar owned that land. Very briefly as an example. So why isn't Mr. Carpenter correct? Why didn't you bring a declaratory judgment over in Morgan County? I guess I could have done that, but we had a case that was already right. We had a tax deed proceeded. And the court shut us down as far as getting a deed to the real estate, saying, well, just denied my deed. So we elected to proceed. Well, how did this additional handwritten information get on? I honestly do not know. Are you seeking to buy the taxes on her property? No. We feel that the cable phone tower is personal property. Or in the alternative, it's a fixture. If, in fact, this court finds that it is a fixture, then it's not taxed separately. It's part of the entire both 010 and 016. And we would be entitled to it all. That is our position. Including the house and all the 4.5 acres and whatever? Because she did not pay all of the taxes. As an example, I lease a home to you, and in the lease it says you're responsible for the taxes. I still own the home. If you don't pay the taxes, I'm going to watch you like a hawk to make sure they're paid. And if they're not paid, I'm going to run in there and pay them, and then I'm going to come after you for reimbursement. So a tax deed could pick up everything. Yeah, same situation here. She owned the land. Mr. Carpenter admitted she owned the land. But he says that she didn't own the cellular tower. If I may use one more example, I'm owning a business and I'm making widgets, and I need to lease some widget machines. So I contact ABC Company and have them bring in some widget machines into my building. I own the real estate, but they own the widgets. Morgan County Treasurer starts taxing these widget machines. That's the same situation as we're dealing with before the court right now. Can't do that. Well, you heard Mr. Carpenter argue that this poor little old lady unfortunately dragged into this litigation and shouldn't have been there, and it's a good thing she paid attention to all the rest of it. Makes a strong case that he's a victim of some nefarious goings-on here. What about him? I understand that that is his argument. But if you focus on the legal argument, she has no standing. She was involved because she allowed this company to come in and build a piece of personal property on her real estate. It is her ultimate responsibility to monitor that. She did monitor that. Why wasn't it resolved at the trial level where this designation 010 came from on this certificate? And since it's something filed by your client, why wouldn't the court reasonably infer he was the one who did it? I don't know. I cannot answer that. I don't think there was any finding at all. If my recollection serves me, there was no finding at all with regard to that. Well, why wasn't it resolved at the trial level? Why is it still an issue coming up here? I mean, you could have said, Mr. Dallager, tell us what happened here. Well, did you write that out? You could have said no. I cover 95 counties, and he doesn't go with me to any of them because we use the affidavit to support the application, which is recognized under Illinois law. Thank you. Thank you, counsel. We'll take this matter under advisement and recess. Thank you.